## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **YOLANDA BRILEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-4341** |
| **MICHAEL J. ASTRUE,** | **SECTION  "M" (3)** |
| **COMMISSIONER OF SOCIAL SECURITY** | |
| **ADMINISTRATION** | |

### REPORT AND RECOMMENDATION

Plaintiff, Yolanda Briley ("Briley"), brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), determining that Briley was not disabled for the purposes of the Social Security Act (the Act) and denying Briley's applications for Supplemental Security Income (SSI) and Disability Income Benefits (DIB).  Briley seeks a ruling reversing the Commissioner's decision and rendering judgment in her favor.

The Court has considered the parties' Cross Motions for Summary Judgment, the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter.  For the following reasons,  IT IS RECOMMENDED that the Plaintiff's Motion for Summary Judgment (Doc. #11) be DENIED, the Commissioner's Cross-Motion for Summary Judgment (Doc. #12) be GRANTED and the Commissioner's decision be affirmed.

### I. JURISDICTION

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

### II. ADMINISTRATIVE PROCEEDINGS

1

Based on the record in this case, Briley exhausted her administrative remedies prior to filing this action in federal court. She applied for DIB and SSI on August 6, 2001,[1] alleging disability beginning August 1, 2001, due to Graves Disease (hypothyroidism), right eye surgery, carpal tunnel syndrome (both wrists) and daily pain.[2]

The Commissioner denied plaintiff's applications.[3]  Briley requested a hearing before an ALJ.[4]  Multiple hearings were conducted in this case by ALJ Philip P. McCleod, to wit: (1) hearing dated March 6, 2006 (the latest hearing) [Tr. 337-351]; (2) hearing dated February 15, 2005 [Tr. 352-360]; (3) hearing dated February 12, 2004 [Tr. 361-373]; (4) hearing dated July 1, 2003 [Tr. Exh. "A"/ Doc. #16]; and (5) hearing dated December 12, 2002 [Tr. 389-406]. Plaintiff was represented by counsel Monica Ferraro, Esq. at the March 6, 2006 hearing; additionally, Vocational Expert (VE) Cindy Harris was present throughout and testified. [Tr. 337-351].

The ALJ issued a decision on March 29, 2006, finding that Briley was insured for disability benefits through December 31, 2006; however, he concluded that plaintiff was not disabled within the meaning of the Act at any time during the period August 1, 2001 through the date of decision.[5]  On April 26, 2006, Briley filed a request for review of the hearing decision on

---

[1]*See* Application for Disability Insurance Benefits [Tr. 72-74]; Application for Supplemental Security Income [Tr. 322-324].

[2]*See* Disability Report (noting that claimant stopped working because of surgery on her right eye and needed surgery of both of her wrists) [Tr. 84].

[3]Disability Determination and Transmittal dated November 27, 2001 [Tr. 33-38].

[4]Request for Hearing dated December 3, 2001 [Tr. 39-40].

[5]*See* ALJ Philip P. McCleod's Determination dated March 29, 2006 [Tr. 13-25].

August 9, 2004.  The Appeals Council denied the request for review on July 18, 2006 after

determining that no basis existed for reviewing the ALJ's decision.  The ALJ's decision became

the final decision of the Commissioner for the purpose of the district court's review pursuant to

42 U.S.C. § 405(g).  Briley filed this action seeking review of the Commissioner's decision on

August 23, 2006.[6]

## III. ISSUES PRESENTED

(1).  Whether the ALJ complied with the regulations governing the determination of the

claimant's residual functional capacity?

(2).  Whether the ALJ complied with the regulations by incorporating all of the plaintiff's

limitations in the hypothetical presented to VE Harris, including whether the ALJ properly

evaluated the plaintiff's credibility, giving appropriate weight to the plaintiff's alleged limitation

that she was precluded from performing all work because of pain?

## IV.  APPLICABLE

### A. Standards of Review

The function of the court on judicial review is limited to determining whether there is

"substantial evidence" in the record, as a whole, to support the final decision of the

Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal

standards in evaluating the evidence.[7]  If the Commissioner's findings are supported by

---

[6]*See* Briley's Complaint [Fed. Rec. Doc. #1],

[7]*See* 42 U.S.C. § 405(g); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002);
*Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.
1995); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman v. Shalala,* 1 F.3d 357, 360
(5th Cir. 1993); *Carriere v. Sullivan,* 944 F.2d 243, 245 (5th Cir. 1991).

substantial evidence, they must be affirmed.[8]

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.[9]  It is more than a scintilla, but may be less than a preponderance.[10]  A district court may not try the issues de novo, reweigh the evidence, or substitute its own judgment for that of the Commissioner.[11]  However, the court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.[12]  Any of the Commissioner's findings of fact which are supported by substantial evidence are conclusive, regardless of whether other conclusions are also permissible.[13]

### B. Eligibility for Disability Benefits

To qualify for Social Security income or disability benefits, the plaintiff must meet the requirements set forth in the Social Security Act.[14]  Specifically, the plaintiff must be under age 65, file an application for benefits and be under a disability as defined by the Act.[15] Those

---

[8]Martinez, 64 F.3d at 173.

[9]Richardson v. Perales, 402 U.S. 389, 401 (1971); and Spellman, 1 F.3d at 360.

[10]Id.

[11]Ripley, 67 F.3d at 555; Spellman, 1 F.3d at 360.

[12]Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

[13]Ripley, 67 F.3d at 555; see also Arkansas v. Oklahoma, 503 U.S. 91, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992).

[14]See 42 U.S.C. § 423(a).

[15]See 42 U.S.C. §§ 416(I), 423(a).

claiming disability insurance benefits under the Act have the burden of showing the existence of disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."[16] Establishment of "disability" within the meaning of the Act is twofold. First, the claimant must demonstrate that she suffers from a medically determinable impairment. Second, the claimant must prove that her impairment or combination of impairments render her unable to engage either in the work she previously performed or other substantial gainful employment that exists in the national economy.[17] Indeed, a disability determination is proper only if claimant's physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[18]

The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Newton v. Apfel,* 209 F.3d at 453. The five-step analysis was cogently restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001):

> First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of

---

[16]*Id.* at § 423(d)(1)(A).

[17]*Id.* at §§ 416(I)(1), 423(d)(2).

[18]42 U.S.C. § 1382c(a)(3)(B).

impairments that are severe.  An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations.  Fourth, the impairment must prevent the claimant from returning to his past relevant work.  Fifth, the impairment must prevent the claimant doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience.  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.[19]

The Court weighs four elements of proof in determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history.  "The Commissioner, rather than the courts, must resolve conflicts in the evidence."[20]

### C.  Medical Opinions of a Treating Source

The ALJ must follow the Guidelines set forth in 96-2p to determine whether "controlling weight" should be given medical opinions of a "treating source."  These guidelines are that: (1) the opinion must come from a "treating source;" (2) the opinion must be a "medical opinion;" (3) the treating source's medical opinion must be "well supported" by "medically acceptable" clinical and laboratory techniques; and (4) even if supported, the opinion must not be inconsistent with other substantial evidence.  Even if the ALJ finds that the treating source's medical opinion is not entitled to controlling weight, that does not mean that the opinion can be

---

[19]*Shave*, 238 F.3d at 593.

[20]*Id.*

6

rejected.  "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."  (SSR 92-2p)

The factors provided in 20 C.F.R. 404.1527 and 416.927 include: (1) Examining relationship; (2) Treatment relationship, length of treatment, frequency of examination, nature and extent of relationship; (3) Supportability; (4) Consistency; and (5) Specialization.[21]  Suffice it to say, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."[22]

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status."[23]  No special significance is accorded to the source of an opinion on issues reserved to the Commissioner, such as whether impairments singly or in combination meet or equal the requirements for impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is known as the Listing of Impairments.  Where there is conflicting evidence regarding an issue reserved for the Commissioner, he has the responsibility to resolve that conflict.  The final decision on whether a claimant is disabled for purposes of the Act is a legal

---

[21]Medical opinions of a specialist are generally accorded more weight than opinions of a source not a specialist. *Moore*  v. *Sullivan,* 919 F.2d 901, 904 (5th Cir. 1990). However, specialization is only one of several factors considered in the evaluation of medical opinions.

[22]*Shave v. Apfel,* 238 F.3d 592, 595 (5th Cir. 2001)(finding that the ALJ's limited rejection of opinions and medical records provided by treating physician justified by the character of records provided  and supported by medical evidence from other treating an reviewing physicians); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

[23]*Moore v. Sullivan,* 919 F.2d at 905.

7

one rather than a medical one, and that determination may be made only by the Commissioner.[24]

In summary, the Commissioner has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of any physician when the evidence supports a contrary conclusion.[25]

## V. FINDINGS AND CONCLUSIONS OF THE ALJ

In the instant case, the ALJ reached his decision at step five of the evaluation process.  At step one, the ALJ determined that Briley had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ determined that plaintiff has "severe" medically determinable impairments, to wit: Grave's disease, carpal tunnel syndrome, history of migraine headaches, cervical disc disease and depressive symptoms.[26]   At step three, the ALJ found that Briley's impairments, either singly or in combination, are not severe enough to meet, medically equal or functionally equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[27]   At step four, the ALJ found that Briley is unable to perform any of her past relevant work[28] and that:

[C]laimant has the residual functional capacity to lift, carry, push and pull a

---

[24]*See Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989); *Moore,* 919 F.2d at 905.

[25]*See Greenspan*, 38 F.3d at 237(holding that the Act empowers the Commissioner to analyze the physicians' testimony and when substantial evidence supports the ALJ's decision to disregard a physician's conclusions, that basis alone is enough to survive judicial review); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Spellman*, 1 F.3d at 364; *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

[26]*See ALJ McCleod's Decision dated March 29, 2006 (*citing Stone v. Heckler*, 752 F.2d 1899) [Tr. 18-19].

[27]*Id.* at 19.

[28]*Id.* at 24.

maximum of 10 pounds.  Said limitations are warranted in light of the objective findings associated with claimant's history of carpal tunnel syndrome and MRI findings of cervical disc abnormalities.  None of the medically determined impairments are shown to limit claimant's ability to walk or stand to a functionally relevant extent.  She has indicated subjective complaints of low back pain, but lumbar x-ray findings were negative and the complaints are not documents as extreme, frequent or severe in nature.  Examinations have shown that claimant's gait is stable and she can independently ambulate without the use of an assistive device.  She can stand and walk for up to 6 hours in an 8-hour day. Her ability to sit is unrestricted.

In light of claimant's history of thyroid concerns, I find that work involving exposure to extremes of temperature should be avoided.  Additionally, claimant is restricted from work involving high levels of stress, production quotas or frequent interaction with the general public.  Although claimant does not seek formal psychiatric treatment, said limitations are based on full consideration of Dr. Hersh's findings as to the functional aspect of claimant's depressive symptomatology.[29]

At step five, the ALJ determined that Briley has no transferrable skills from any past work.  The ALJ also determined based upon the VE testimony that a significant number of jobs existed in the national economy that Briley could perform during the relevant period of time, including security guard (light, unskilled), general office clerk (sedentary, unskilled),  and general office clerk (restricted range of light, unskilled).  Thus, ALJ McCleod concluded that the claimant was not disabled as defined in the Act.

## VI. DISCUSSION

### A.  The ALJ Residual Functional Capacity Assessment Complies with the Governing Regulations and is Supported By Substantial Evidence of Record.

Briley takes issue with the ALJ's residual functional capacity assessment.  In this regard, plaintiff argues that substantial evidence of record does not support the ALJ's conclusions

---

[29]*Id.* at 22-23.

regarding the inconsistency in the frequency of her reported migraine headaches or her alleged non-compliance with the prescribed treatment regimen. She further challenges the ALJ's conclusion that jobs existed in the national economy that she could have performed *on a regular and continuous basis* during the relevant time period.

The Social Security regulations and rulings provide guidance for the ALJ in determining a claimant's RFC. See 20 C.F.R. §§ 404.1545, § 416.945; and SSR 96-8p. Specifically, the regulations provide that an RFC is "an assessment based upon all of the relevant evidence." 20 C.F.R. § 404.1545(d). In addition, SSR 96-8p provides that the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure the file contains sufficient evidence to assess the RFC." SSR 96-8p. The RFC assessment must always consider and address *all* medical source opinions. *Id.* SSR 96-8p states that an ALJ's assessment of a claimant's RFC must contain a "thorough discussion of the objective medical evidence," as well as discuss how, "any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Social Security Ruling 96-8p provides that residual functional capacity "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." "The RFC assessment is a function-by- function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* (*quoting* 61 Fed. Reg. 34474-01 (July 2, 1996)). Therefore, inherent in every residual functional capacity assessment is a finding that the claimant can perform work on a regular and continuing basis, and thus can maintain employment. *See* 20 C.F.R. S 404.1545(b).

10

The Fifth Circuit considers these regulations and rulings to be relevant to any decision.  *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir.2001).

The ALJ complied with the applicable regulations discussed above.  It is clear that the ALJ performed the appropriate analysis with respect to the plaintiff's treating physicians' assessments. In this regard, the ALJ relied collectively on plaintiff's treating specialists and the consulting examiners (*i.e.*, Drs.  Nitsche and Hersh).  The specialists' reports, findings and conclusions do not conflict in any significant aspect regarding the plaintiff's condition.  To the extent that it can be argued that there is conflicting evidence, it is the responsibility of the ALJ, not the court, to resolve conflicts in the evidence.[30]

In addition to the medical records, the ALJ properly considered the plaintiff's activity level in assessing both her residual functional capacity and her credibility.  Plaintiff testified that her daily activities include taking care of children, helping her  71 year old mother put her house back in order and dealing with the insurance adjusters.[31]  Plaintiff takes care of all of her own personal needs.

Complete review of the medical records yields substantial support for the ALJ's conclusion that plaintiff's headaches were under control when she was compliant with her medication regimen.  Medical records dated 2001 and 2002 indicate that Briley had frequent headaches (4 to 5 times a week) because she did not tolerate Elavil or Sumatriptan well. However, LSU Medical Center Records dated June 6, 2003 showed that Topomax worked great

---

[30]*Martinez,* 64 F.3d at 174.

[31]Transcript of March 6, 2006 Hearing [Adm. Rec. 342].

for plaintiff, noting none (no headaches) in four to five months.[32]  Medical records dated

December 5, 2003 confirm that plaintiff had stopped taking  Topomax and the headaches

recurred about two times a week.  Plaintiff was then instructed to restart Topomax therapy.[33]

Medical records dated June 27, 2004 indicate "migraines are better" and Briley was instructed to

"continue Topomax."[34]  LSU treatment records dated February 11, 2005 also reflect that "patient

was prescribed Topomax and it helped but she stopped" and patient "now realizes it [Topomax]

did help."[35]

   In summary, substantial medical evidence of record supports the ALJ's conclusion that

Briley's migraines were controlled and occurred with much less frequency when she was

compliant with prescription drug therapy (Topomax) as instructed by her treating physicians.

Pain is disabling when it is "constant, unremitting, and wholly unresponsive to therapeutic

treatment."[36]  The medical evidence does not show that the pain Briley experienced from

migraine headaches was constant or unremitting when she was compliant with prescription drug

therapy.  The evidence shows that plaintiff's headache pain was controlled by medication when

she was compliant with her physician's orders.

   Plaintiff's contention that her case must be reversed or remanded under *Watson v.*

---

[32]*See* LSU Health Center Out-Patient Department Progress notes dated June 6, 2003 (stating that plaintiff had been "headache free during the 4 to 5 month interval of treatment" and that headaches began to recur when plaintiff ran out of her medication) [Tr. 273].

[33]*See id.* (noting assessing "migraines" and further noting that plaintiff was "currently on no treatment") [Tr. 283].

[34]*Id.* [Tr. 296].

[35]*Id.* [Tr. 313].

[36]*Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994).

*Barnhart*, 288 F.3d 212 (5th Cir.2002), for a determination of whether she is capable of not only

of obtaining employment but also of maintaining employment,[37] is without merit.  The Fifth

Circuit has rejected the notion that the ALJ must, in every case, make a determination on the

claimant's ability to maintain employment.[38]

In *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003), the Fifth Circuit clarified that

"nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's

ability to maintain employment in every case."[39] The Fifth Circuit further explained:

> *Watson* required the ALJ to make a finding as to the claimant's ability to maintain
> a job for a significant period of time, notwithstanding the exertional, as opposed
> to non-exertional ( *e.g.*, mental illness) nature of the claimant's alleged disability.
> *Watson* requires a situation in which, by its nature, the claimant's physical ailment
> waxes and wanes in its manifestation of disabling symptoms. For example, if
> Frank had alleged that her degenerative disc disease prevented her from
> maintaining employment because every number of weeks she lost movement in
> her legs, this would be relevant to the disability determination. At bottom, *Watson*
> holds that in order to support a finding of disability, the claimant's intermittently
> recurring symptoms must be of sufficient frequency or severity to prevent the
> claimant from holding a job for a significant period of time. An ALJ may explore
> this factual predicate in connection with the claimant's physical diagnosis as well
> as in the ability-to-work determination. Usually, the issue of whether the claimant
> can maintain employment for a significant period of time will be subsumed in the
> analysis regarding the claimant's ability to obtain employment. Nevertheless, an
> occasion may arise, as in *Watson*, where the medical impairment, and the
> symptoms thereof, is of such a nature that separate consideration of whether the
> claimant is capable of maintaining employment is required. Frank did not
> establish the factual predicate required by *Watson* to necessitate a separate finding
> in this regard.[40]

---

[37]*See Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002) (holding that the ALJ erred
in failing to determine whether Watson was capable not only of obtaining employment, but also
maintaining it).

[38]*See Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

[39]*Id.* at 619.

[40]*Id.* at 619-20.

Furthermore, this Court cannot ignore the Fifth Circuit's observation in *Dunbar v. Barnhart*, 330 F.3d 670 (5th Cir.2003) – *i.e.*, that inherent in the definition of RFC is the understanding that the claimant can *maintain* work at the level of the RFC.[41]  Therefore, absent evidence that a claimant's ability to maintain employment would be compromised despite her ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular basis was inherent in the definition of RFC, the Fifth Circuit does not require a specific finding that a claimant can maintain employment.[42]

In the case at bar, Briley did not allege that she could only work for short periods of time. Rather her allegations were that she could not work at all. Consequently, the ALJ was not required to make a separate finding regarding plaintiff's ability to maintain employment. As such, taken as a whole, there is sufficient evidence in the record indicating that plaintiff's pain does not preclude gainful employment.  Most notably, the testimony of both the plaintiff and her mother was that she experienced headaches for decades[43] and that did not preclude her past relevant work as either an assembly line worker, packer, certified nursing assistant or housekeeper.  Moreover, multiple examining or treating physicians' assessments indicate that

---

[41]*See Dunbar v. Barnhart*, 330 F.3d 670, 671 (5th Cir. 2003).

[42]*See id.*

[43]*See* Transcript of the December 12, 2002 Hearing (wherein plaintiff testified that she had headaches since she was three years old); Transcript of the February 12, 2004 Hearing (wherein Briley's mother testified that plaintiff was having migraines when she was gainfully employed) [Tr. 369-370].

14

plaintiff was capable of performing at least light level work and therefore not disabled.[44]

Clearly, Briley has not established the factual predicate required by *Watson* to necessitate a separate finding on her ability to maintain employment. *Frank*, 326 F.3d at 619.

### B.  A Valid Hypothetical Question Need Only Incorporate Impairments and Limitations Found Credible by the ALJ.

"When, as here, the claimant suffers from additional limitations that make the Medical-Vocational Guidelines [of the SSA regulations] inapplicable, the Commissioner must rely upon the services of a vocational expert or similar evidence"[45] to determine whether there is other work that the claimant can perform.[46]  The value of a vocational expert is that he or she is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.   A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job.   VE Harris was familiar with the plaintiff's medical records and the plaintiff's hearing testimony.

When eliciting expert vocational testimony, an ALJ typically poses a hypothetical question that incorporates all disabilities that the ALJ has found.  If the disabilities recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent

---

[44]*See* Dr. Nitsche's Report dated February 20, 2003 (review of systems all essentially normal, affect was normal, physical examination including range of motion normal/full and concluding that because of claimant's medical problems she may find it difficult to perform *heavy* physical work) [Tr. 226-230]; Report of Dr. Sheldon Hersch dated July 13, 2004 (noting that her physical examination was unremarkable/normal and concluding that work in a stressful environment would be difficult because of her depression) [Tr. 285-288].

[45]*Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir.2000).

[46]*See Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986).

with the expert vocational testimony, the ensuing decision is considered to be supported by substantial evidence.[47]   However, if the hypothetical question is defective due to the ALJ's failure to accurately portray a claimant's physical and mental impairments, a determination of non-disability based on the vocational expert's answer to a defective question is not supported by substantial evidence and cannot stand.[48]

The ALJ posed a hypothetical question to the vocational expert at the March 6, 2006 hearing.  That question included Briley's age, education, past relevant work experience, and residual functional capacity for a limited range of  work.  More particularly, the ALJ stated:

> I'd like the vocational expert to assume for the purposes of this question, I find the claimant to have a medically determinable impairment likely to produce the following credible symptoms and limitations.  Assume that due to the history of carpal tunnel syndrome and MRI findings of cervical disc abnormalities, she is limited to lifting and carrying a maximum of 10 pounds, limited to pushing and pulling to the same extent.  Assume that as far as sitting is concerned there are no significant limitations, she can sit up to six hours in an eight hour day or more.  Assume that she can stand and walk up to six hours in an eight hour day.  Assume that due to hypothyroidism, she must avoid extremes of temperature (hot and cold).  Assume she should avoid work which involves high stress, such as work with specific production quotas and work involving constant interaction with the general public....  Assuming an individual with those same restrictions, who is 41 years old and who has a limited education, who can read, write and do simple arithmetic and handle money, is there work available in the regional or national economy for such an individual?[49]

In response, the vocational expert testified that such a hypothetical individual could perform the sedentary job of general office clerk and the light unskilled job of security guard which exist in significant numbers in the national economy.  In addition, VE Harris testified that

---

[47]*Morris v. Bowen*, 864 F.2d 333 (5th Cir.1988).

[48]*Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir.2001) (*citing Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir.1994)).

[49]*See* Transcript of March 6, 2006 Hearing [Tr. 346].

there is also be a restricted range of light level general office clerk positions which exist in significant numbers in the national economy.[50]

The ALJ's hypothetical question incorporated all of the plaintiff's impairments and limitations *which he found credible*.  Both conflicts in the medical evidence and credibility determinations are peculiarly the province of the ALJ.[51]   Moreover, the ALJ's assessment of the claimant's credibility is accorded great deference.[52]   The record lacks medical findings that corroborate any impairment which significantly affected the claimant's residual functional capacity to perform the sedentary and light level work identified by the VE.   An ALJ has the discretion to evaluate credibility and to arrive at an independent judgment regarding pain as well as the duty to ultimately determine disability on the basis of the claimant's residual functional capacity to engage in gainful employment.

Again, the focal issue is whether substantial evidence supports the ALJ's rejection of Plaintiff's subjective complaints of  *disabling* symptoms in light of the objective medical evidence, *inter alia*.  This Court previously determined in the context of its discussion of the ALJ's RFC assessment that there is substantial evidence to support the ALJ's conclusion rejecting Briley's testimony regarding *disabling* pain.  The ALJ's credibility assessment comports with the relevant legal standards outlined in Ruling 96-7p, *inter alia*.

More to the point, it is apparent to this Court that the ALJ did consider the claimed non-exertional limitation of pain and determined that it was only slight and had a minimal effect on

---

[50]*Id.* [Tr. 346-347].

[51]*See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999).

[52]*See Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002) (stating that the ALJ has the responsibility to resolve questions of credibility).

plaintiff's ability to work *when she was compliant with prescription drug therapy*.  The ALJ made this determination in light of all of the witnesses' hearing testimony and the administrative record, including the plaintiff's statements made to and reported by treating and examining physicians.  ALJ McLeod sufficiently explained that the medical treatment records considered together with the plaintiff's own testimony do not support plaintiff's allegations of *debilitating* migraine headache pain.[53]

Additionally, the ALJ thoroughly evaluated plaintiff's complaints of carpal tunnel syndrome, noting that she underwent carpal tunnel releases in October of 2001.  Occupational therapy discharge notes dated March of 2002 show that plaintiff's muscle strength was 4/5, with 5 representing normal strength.[54]

Pursuant to his examination of the plaintiff, Dr. Nitsche specifically noted no chronic localized joint pain or articular swelling.[55]  His functional assessment further revealed that plaintiff's grip strength, pinch, grasp, handling and fingering were normal bilaterally.[56] Moreover, diagnostic tests revealed that both hands and wrists were within normal limits, with joint spaces well preserved and bones well aligned.  He found no evidence of any fractures, cysts, erosions or spur formation in the compartment of either wrist or within the compartments

---

[53]*See* ALJ McLeod's Decision (highlighting that Briley's non-compliance plays a prominent role in her lack of symptom control and that "clearly, her daily activities are not restricted to any significant degree")  [Adm. Rec. 23].

[54]*See* LSU Occupational Therapy Records dated March 20, 2002 [Tr. 206].

[55]*See* Dr. John F. Nitsche's Report dated February 20, 2003 [Tr. 226].

[56]*Id.* [Tr. 229].

of the digits of either hand.[57]

Following carpal tunnel release on the left side in February of 2003, medical reports note that plaintiff's symptoms were "much improved."[58]   Examination of the plaintiff by Dr. Hersh on July 13, 2004 similarly revealed that plaintiff's grip and pinch were normal bilaterally, there was no atrophy and that Briley had full range of motion in the small joints of the hands, wrists, elbows and shoulders.[59] Dr. Hersh performed a neurological examination which was completely normal and he further observed that Briley's gait was normal.[60]   Dr. Hersh also reported that, "using either hand, [plaintiff] is able to button her clothing, manipulate a coin, cut her food and groom herself."[61]   As previously mentioned, the only restrictions recommended by Hersh were non-exertional, to wit: "work in a stressful environment would be difficult because of the depression."[62]   The restrictions recommended by Dr. Hersh were all incorporated in the hypothetical posed by ALJ McLeod to the vocational expert.[63]

ALJ McLeod's hypothetical question incorporated all limitations which were supported by substantial evidence.[64]   The ALJ adopted the VE's testimony that the hypothetical individual

---

[57]*Id.*

[58]*See* LSU Out-Patient Depart Progress Notes dated March 13, 2003 (noting "much improvement").

[59]*See* Dr. Sheldon Hersh's Report dated July 13, 2004 [Tr. 287-88].

[60]*Id.* [Tr. 287, 289].

[61]*Id.* [Tr. 285].

[62]*Id.* [Tr. 289].

[63]See Transcript of the March 6, 2006 Hearing [Tr. 346].

[64]*Id.*

with same capabilities, limitations, restrictions and background as the plaintiff could perform certain sedentary and light work jobs available in the national economy in response.[65]  The only questions posed to the VE by plaintiff's counsel concerned the alleged severity and frequency of headaches rejected by the ALJ.  Plaintiff's testimony in this regard was not credited and the ALJ's credibility assessment was based upon substantial evidence that plaintiff's symptoms were completely controlled when she was compliant with prescription drug therapy.[66]

### VI. Conclusions and Recommendation

The Commissioner's Step 5 determination and ultimate decision is supported by substantial evidence.  The plaintiff did not carry her burden of demonstrating by substantial evidence of record that she was <u>not</u> capable of performing the alternate work identified by the ALJ.  Because substantial evidence supports the ALJ's Step 5 determination that jobs existed in the economy that Briley was capable of performing during the time period of August 1, 2001 through the date of the decision,

**IT IS RECOMMENDED** that: (1) Plaintiff's Motion for Summary Judgment be DENIED; (2) the Commissioner's Motion for Summary Judgment be GRANTED; and (3) the Commissioner's decision denying Briley's applications for benefits be AFFIRMED.

---

[65]*Id.* [Tr. 346-347].

[66]In response to the ALJ pointed questions at the March 6, 2006, Briley admitted at the close of the hearing that: (1) she had a stack of unfilled prescriptions at home including prescriptions for Topomax from August 23, 2005 (when she last saw her physician); (2) yet again, she stopped taking Topomax two months prior to the hearing; and (3) she opted to take over-the-counter pain medication (Ibuprofen) instead of complying with the regimen planned and prescribed by her treating specialist.  *See* Transcript of the March 6, 2006 Hearing [Tr. 348-350].

**NOTICE OF RIGHT TO OBJECT**

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 1st day of August, 2007.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

21